**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CENTURION MPP PTE LTD.,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | No.  1:26-CV-00542-ADA |
| | § | |
| **BLACK RIVER SHIPPING** | § | |
| **CORPORATION,** | § | |
| *Defendant* | § | |

**ORDER**

Before the Court are Plaintiff Centurion MPP Pte Ltd.'s ("Centurion") complaint, Dkt. 1; motion for an order directing the Clerk to issue supplemental Rule B process of maritime attachment and garnishment ("Rule B Writ"), Dkt. 4; and motion for appointment for service of process of maritime attachment and garnishment, Dkt. 5. For the reasons discussed below, the Court will grant the motions.

## I.    BACKGROUND

Centurion alleges that it chartered a vessel to Defendant Black River Shipping Corporation ("Black River"). Dkt. 1, at 3. Under the parties' agreement, Black River was required to pay for daily charter hire and related vessel expenses. *Id.* When Centurion issued statements to Black River for payment, Black River paid some, but not all, of the charges. *Id.* Centurion states it believes that Garnishees Louis Dreyfus Company Agricultural Products LLC, Bunge USA Grain, LLC, Bunge USA

1

Agriculture LLC, and Bunge USA Ag Holdings, LLC (the "Garnishees") hold accounts or property due to Black River. *Id.* at 3-4.

Based on these facts, Centurion brings claims for breach of maritime contract and maritime attachment and garnishment (Rule B). *Id.* at 4. In support of its breach-of-contract claim, Centurion states that (a) it and Black River entered a contract for charter of the vessel whose primary object was maritime commerce; (b) Black River has breached the maritime contract; and (c) Centurion remains unpaid for amounts due as a result of the breach. *Id.* In support of its Rule B claim, Centurion argues that (a) it has stated a prima facie valid admiralty claim and (b) Black River cannot be located within the Western District of Texas within the meaning of Supplemental Rule B but is believed to have or will have property and/or assets in this jurisdiction. *Id.*

## II.    LEGAL STANDARD

Supplemental Admiralty and Maritime Claims Rule B(1)[1] "allows a district court to take jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant." *Malin Int'l Ship Repair & Drydock, Inc. v. Oceanografia, S.A. de C.V.*, 817 F.3d 241, 244 (5th Cir. 2016) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001)). The purposes of this power are "to secure a respondent's appearance and to assure

---

[1] Rule B states, "If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property up to the amount sued for in the hands of garnishees named in the process." Fed. R. Civ. P. Supp. R. B(1)(a).

satisfaction in case the suit is successful." *Id.* (quoting *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684, 693 (1950)). "A Rule B maritime attachment is a remedy available only under a court's admiralty jurisdiction." *Alphamate Commodity GMBH v. CHS Eur. SA*, 627 F.3d 183, 186 (5th Cir. 2010) (citing Fed. R. Civ. P. 9(h); Fed. R. Civ. P. Supp. R. A(1)(A)). So, "[i]f the underlying dispute or claim does not fall within admiralty jurisdiction, the court lacks the authority to issue the Rule B attachment." *Id.*

"Neither Rule B nor any other of the Supplemental Rules create[s] a valid prima facie admiralty claim." *Id.* (internal quotation marks omitted). "Rather, the Supplemental Rules fashion procedures by which a valid maritime claim may form the basis for a writ of maritime attachment." *Id.* (internal quotation marks omitted).

A party seeking a writ of maritime attachment and garnishment must show four prerequisites:

> (1) an *in personam* claim against the defendant which is cognizable in admiralty; (2) the defendant cannot be found within the district in which the action is commenced; (3) property belonging to the defendant is present or will soon be present in the district; and (4) there is no statutory or general maritime law prohibition to the attachment.

*Boland Marine & Indus., LLC v. Bouchard Transp. Co., Inc.*, No. 1:20-CV-66-LY, Dkt. 8, at 3 (W.D. Tex. Jan 23, 2020) (citing 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 21:3 (6th ed. 2019)). After review of the plaintiff's complaint and affidavit, "if the conditions of this Rule B appear to exist," the court must "enter an order so stating and authorizing process of attachment and garnishment." Fed. R. Civ. P. Supp. R. B(1)(b); *see also Heidmar, Inc. v. Anomina Ravennate Di Armanento Sp.A. of Ravenna*, 132 F.3d 264, 267 (5th Cir. 1998). At this stage, a plaintiff's claims

3

must be "'plausible on their face, and the identification of the attached or garnished property should be clearly and unequivocally stated.'" *Boland*, No. 1:20-CV-66-LY, Dkt. 8, at 4 (citing 2 Schoenbaum § 21:3).

### III.   DISCUSSION

#### A.   Centurion states an *in personam* claim against Black River which is cognizable in admiralty.

While to determine whether a plaintiff has asserted an *in personam* claim cognizable in admiralty, courts typically ask if "minimum contacts" exist between the defendant and the forum, "'the remedy of maritime attachment is constitutionally sound and provides a jurisdictional basis for an action in admiralty despite the absence of minimum contacts.'" *Id.* at 4 (citing 2 Schoenbaum § 21:3). Courts also ensure that the plaintiff's claims sound in admiralty by considering whether the principal object of the claimed contract is maritime commerce. *Id.* (citing *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010)).

While Centurion does not allege specific facts as to Black River's (as opposed to the Garnishees') minimum contacts with this District, "'[u]nder the attachment rules, whether [the defendant] has ever been physically present or domiciled in the forum state is immaterial.'" *Id.* (citing *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1090 (N.D. Cal. 2002)). Centurion's facts satisfy the requirement that its claims primarily concern maritime commerce. *See, e.g.*, Dkt. 1, at 3 (alleging that Centurion chartered a vessel to Black River for maritime commerce). As in

*Boland*, the Court finds that Centurion states an *in personam* claim against Black River which is cognizable in admiralty.

### B.      Black River cannot be found in this District.

"'The second and more crucial inquiry is whether the defendant is present within the district for service of process.'" *Boland*, 1:20-CV-66-LY, Dkt. 8, at 5 (citing 2 Schoenbaum § 21:3). This determination must be made before attachment is ordered. *Id.* (citing *Heidmar*, 132 F.3d at 267-68). In its complaint, Centurion states that Black River "cannot be found in this District for the purposes of Supplemental Rule B." Dkt. 1, at 2. Centurion supports this contention with a declaration from counsel. *Id.* at 6; *see Submersible*, 249 F.3d at 422. This condition is met.

### C.      Black River's property is present in this District.

Rule B authorizes attachment of Black River's "'tangible or intangible personal property up to the amount sued for in the hands of garnishees named in the process,' … so long as it is 'within the territorial reach of the district court[.]'" *Boland*, 1:20-CV-66-LY, Dkt. 8, at 5 (citing Fed. R. Civ. P. Supp. R. B(1)(a); 2 Schoenbaum § 21:3). "The property attached need not have any relationship with the claim sued upon but the defendant must have an interest in the property involved," and "[a]ny right or title to property will be sufficient." *Id.* (citing 2 Schoenbaum § 21:3; *Malin*, 817 F.3d at 244).

Centurion alleges it believes Black River has, or will have during the pendency of this action, property in this District controlled by the Garnishees. Dkt. 1, at 3-4. Centurion asks for attachment of all property or funds held by the Garnishees up to

$4,758,622.78, which includes the amount demanded, demurrage for 120 days, contractual interest, and attorneys' fees. *Id.* at 5. The Court finds that this entire amount is included in the "amount sued for" under Fed. R. Civ. P. Supp. R. B(1)(a). *See Boland*, 1:20-CV-66-LY, Dkt. 8, at 6. This requirement is satisfied.

### D.    No prohibition bars attachment and garnishment here.

Finally, the Court finds no statutory or general prohibition in maritime law barring attachment or garnishment here. *See id.* Thus, this condition is met at this stage.

### IV.    CONCLUSION

In accordance with the above discussion, **IT IS ORDERED** that Centurion's motion for an order directing the Clerk to issue supplemental Rule B process of maritime attachment and garnishment ("Rule B Writ"), Dkt. 4, is **GRANTED**. Process of maritime attachment shall be issued to garnish and attach Black River's property, held by the Garnishees, in the amount of $4,758,622.78, as security.

**IT IS FURTHER ORDERED** that Centurion's motion for appointment for service of process of maritime attachment and garnishment, Dkt. 5, is **GRANTED**. J. Stephen Simms, attorney of record for Centurion, or any other person appointed by him who is at least 18 years old and not a party to this action, is appointed to serve process of maritime attachment and garnishment, along with a copy of Centurion's complaint, and a copy of this order. *See* Fed. R. Civ. P. Supp. R. B(1)(d)(ii); Fed. R. Civ. P. 4(c).

**IT IS FINALLY ORDERED** that, under Supplemental Rule B(a)(b), the Clerk shall issue supplemental process enforcing this order to issue the Rule B Writs upon application without further Court order. *See* Fed. R. Civ. P. Supp. R. B(1)(b).

SIGNED March 11, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE